# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOHN DOE OF CONNECTICUT and
JOHN DOE OF FLORIDA,

               Plaintiffs,

      v.                                 Case No. 10-C-911

RICK RAEMISCH et al.,

               Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

      Plaintiffs John Doe of Connecticut (Doe I) and John Doe of Florida (Doe II) are each adult males who were previously convicted of sex crimes in Wisconsin and are subject to Wisconsin's sex offender registration and notification statutes, Wis. Stat. §§ 301.45, 301.46 (2009-10)[1]. Plaintiffs filed this action against the Wisconsin Department of Corrections (DOC), its secretary and the director of the DOC's Sex Offender Program, alleging that the application and enforcement of the Wisconsin sex offender registration requirements against them constituted punishment in violate the ex post facto clauses of the United States and Wisconsin constitutions. Plaintiffs also allege that subjecting them to these laws violated their constitutional rights to equal protection and substantive due process and unconstitutionally impaired their respective plea agreement contracts. Finally, Plaintiffs claim the website that posts their registration violates their right to privacy under Wis.

---

[1]All references are to the 2009-10 edition of the Wisconsin Statutes.

Stat. § 995.50, and that the rule requiring them to disclose their email accounts, internet user names and addresses, and websites violates their First Amendment rights. The parties have filed cross-motions for summary judgment (ECF Nos. 21, 26) and the case is now ripe for resolution. For the reasons discussed below, Plaintiffs' motion (ECF No. 26) will be granted in part as to the $100 annual assessment § 301.45(10) imposes. In all other respects, Plaintiffs' motion is denied and Defendants' motion (ECF No. 21) will be granted.

## I. Background

Doe I is currently 56 years old, married, resides in Connecticut, and has four adult children, three of whom are pursuing advanced post-graduate degrees. On April 21, 1993, Doe I was convicted on pleas of no contest in the Circuit Court for Winnebago County of two counts of second degree sexual contact in violation of section 948.02(2) of the Wisconsin Statutes (sexual contact or intercourse with one who has not attained the age of 16). Doe I was 37 years old at the time of the offense. The sentencing court imposed but stayed a four-year term of imprisonment and placed Doe I on probation for six years. Conditions of probation included 2000 hours of community service for the local school district. While he was on probation, the Wisconsin Department of Corrections (DOC) assessed Doe I's risk of reoffense at the lowest level. Doe I satisfied all conditions of his probation and received an absolute discharge on April 21, 1999.

Doe II is currently 46 years old, married, resides in Florida, and has two sons (ages 2 and 4) and an adult daughter. He is also stepfather to his wife's children. On April 14, 1987, an Outagamie County jury found Doe II guilty of sexual assault of a 19-year old female in violation of Wis. Stat. § 940.225(2)(a). He was also found guilty of endangering safety by conduct regardless

2

of life in violation of Wis. Stat. § 941.30 and false imprisonment contrary to Wis. Stat. § 940.30. Doe II, who was 20 years old at the time of the time of the offense, was sentenced to five years in prison and discharged on June 13, 1995. On May 12, 1993, Doe II, then 27 years old and presumably on parole, was convicted in Winnebago County Circuit Court on a plea of no contest of third degree sexual assault in violation of Wis. Stat. § 940.225(3). He was sentenced to one year imprisonment and discharged from that sentence on June 16, 1994.

Although Wisconsin's statute requiring registration of sex offenders was not in effect at the time of their convictions, both Plaintiffs were required to register as sex offenders before completing their sentences. Wisconsin's sex offender registration statute became effective on December 25, 1993, and applies to offenders who were still serving their sentences or were under supervision as of that date. Wisconsin's first statute required that Plaintiffs maintain their registration for fifteen years and did not require community notification. Plaintiffs understood the information would be used for law enforcement purposes. Over the years that followed, the Wisconsin legislature significantly increased the length of time Plaintiffs would have to maintain their registrations, the information the register included, and the general public's access to the information.

Wis. Stat. § 301.45 sets forth the scope and requirements of Wisconsin's current sex offender registration law. The law generally requires that any person convicted of a sex offense, which includes, inter alia, any felony sexual assault and possession of child pornography, register with the DOC. The registry maintained by DOC is required to contain various items of information, including the offender's name, aliases, identifying features, offense, date and place of conviction, date of release from prison or supervision, place of residence, supervising agency (if any), place of employment or school, and the most recent date the information was updated. Wis. Stat.

3

§ 301.45(2)(a)(1)–(10). Sex offenders subject to registration are also required to provide the DOC with all email accounts, internet user name and addresses, and identifiers for any email account, website, or internet address the offender "creates, uses, or maintains for personal, family, or household use," but that information, which does not include passwords, is not placed on a registry accessible to the public. Wis. Stat. § 301.45(2)(a)(6m). In addition to providing DOC the foregoing information, DOC may also require offenders to go to an office or station of a local law enforcement agency to provide their fingerprints, a recent photograph or other information. Wis. Stat. § 301.45(2)(f). If any of the required information changes, the offender must notify the DOC within ten days. Wis. Stat. § 301.45(4).

Generally, offenders must provide the required information to DOC upon being placed on supervision, released from prison or entering the state and must comply with the registry requirements on an annual basis for 15 years after confinement or probation. Wis. Stat. §§ 301.45(3)(b)(1), 301.45(5)(a)(1). However, offenders who have been convicted of a violent sexual assault or multiple sexual offenses must register for life and verify the information every 90 days. Wis. Stat. §§ 301.45(5)(am)(2)(1) and 301.45(3)(b)(1m). A sex offender who knowingly fails to comply with the foregoing requirements is subject to criminal prosecution. In addition, an offender who moves, goes to school or obtains employment in another state must notify the DOC at least ten days before the move or change in school or employment so that DOC can inform the offender of that state's registration requirements and notify the state's agency responsible for registration of the impending move or change. Wis. Stat. § 301.45(4m). Finally, the statute authorizes the DOC to require any person who must register to pay an annual fee not to exceed $100

4

to partially offset the cost of monitoring them. Wis. Stat. § 301.45(10). Based on their previous convictions, both Plaintiffs are subject to the lifetime registration requirements.

Wis. Stat. § 301.46 governs access to sex offender registry information. The statute requires DOC to immediately notify law enforcement agencies serving in the community or county where a registered sex offender resides, works or attends school of the registrant's basic identifying information. Wis. Stat. § 301.46(2)(a). The victim of the offender's crime, or the family of the victim, must be notified, as well. Wis. Stat. § 301.46(3). Upon request, the information must also be provided to the police chief or sheriff of other communities or counties. Wis. Stat. § 301.46(2)(d). A police chief or sheriff may then provide such information to various other entities such as schools, government agencies, licensed care and treatment providers, neighborhood watch programs, Boy and Girl Scout groups and any other nonprofit approved by DOC. Wis. Stat. § 301.46(4). As of June 1, 2001, sex offender registration information, including a photo of the offender, became available to the public on the internet. Wis. Stat. § 301.46(5n). The DOC website also indicates whether the listed sex offender is in compliance with the registration requirements. The stated purpose of placing the information online was to allow the public to obtain basic information about sex offenders that the DOC "determines is necessary to protect the public." Wis. Stat. § 301.46(5n)(a). In addition to the DOC's own website, a company called Family Watchdog, Inc., by agreement with DOC, operates its own website which performs monitoring, mapping and tracking function on registered sex offenders. After a one-time request is made to get "alerts" as to sex offenders, either specifically by name or generally as a class, Family Watchdog automatically sends the requester alerts on his or her computer, smartphone, or other text-capable electronic communication device.

5

In addition to the registration and notification statutes, the Wisconsin legislature also enacted several statutes that make it a crime for individuals previously convicted of sex offenses to engage in certain activities. A sex offender who is required to register, for example, is prohibited from changing his name or identifying himself by a name different than one by which he is identified with the DOC. Wis. Stat. § 301.47. A person who has been convicted of a serious child sex offense may not engage in an occupation or participate in a volunteer position that requires him to work or interact primarily and directly with children under 16 years of age. Wis. Stat. § 948.13(2). And registered sex offenders are prohibited from taking pictures of minor children without the written consent of their parents, legal custodian or guardian. Wis. Stat. § 948.14(2).

Plaintiffs contend that their forced compliance with these laws has seriously and unreasonably damaged them and their families. Doe I states that he has been gainfully self-employed his entire adult life devoting himself to careers in music composition, performance, direction, arranging and recording; recording engineering; book and play writing and music theater writing, with an emphasis in past years on children's plays and musicals; and website design. Even though his conviction was almost twenty years ago, he has successfully completed his probation, and has had no new arrests or convictions either before or since the 1993 conviction, Doe I is subject to the lifetime registration requirements and restrictions. The prohibition of working or volunteering on projects which involve direct contact with children substantially interferes with his ability to perform his usual occupation since so many musicals and plays include children in the cast. A dance troupe in a nearby city that had expressed interest in his music dropped all contact with Doe I after it discovered his registration. Area teachers who had been interested in his educational children's musical series are no longer interested in Doe I's work as a result of the

6

postings concerning his past. Because of the disclosure of his prior conviction and identifying information on a public website registration, Doe I is afraid to participate in charitable or other public activities because of the risk that his past will be discovered and both he and the charity will be embarrassed.

Doe II has encountered similar problems as a result of the public posting of his registration. Following completion of his sentence, Doe II attended college and technical school. He has since been gainfully employed primarily in supervising large construction projects, including major hotel chains, condominium developments, medical facilities, shopping centers and luxury homes in various states. The postings of Doe II's registration information on a publicly accessible website has adversely impacted his business in that a corporate merger with another company fell through when his status as a sex offender became known. Doe II was disqualified as a candidate for an award of a multi-million dollar contract for the construction of a new medical/hospital facility after a vice-president of the company making the awards saw him on the registry. Because other contractors have also shunned him, Doe II's business is failing as a result and his house is in foreclosure.

Plaintiffs also claim the registration and notification requirements and restrictions have also more directly impacted their families. Like Doe I, Doe II claims he is barred from working with children and thus cannot coach his son's football or hockey teams, or volunteer at school events. Both Doe I and II complain that they are unable to video record family members at public events because of the ban on taking pictures of children without their parents' written consent. Publicly listing them as sex offenders has adversely impacted Plaintiffs' wives, causing undue stress and embarrassment, and will also affect their children.

7

Plaintiffs argue that they are entitled to summary judgment because taken in their totality, the additional requirements and restrictions placed upon them as a result of the changes in Wisconsin law over the last two decades amount to additional punishment imposed for their prior convictions and therefore violate the ex post facto clauses of the United States and Wisconsin constitutions. Plaintiffs also argue that the statutes unreasonably and impermissibly discriminate among offenders in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendants, on the other hand, contend that the United States and Wisconsin Supreme Courts have rejected Plaintiffs' ex post facto challenge and that their remaining arguments fail as a matter of law.

## II. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Analysis

While Plaintiff's particular challenges to the amended Wisconsin statutes raise some novel issues, the United States Supreme Court has already provided much guidance on the

8

constitutionality of sex offender and registration laws. Most notably, in *Smith v. Doe*, the United States Supreme Court assessed whether Alaska sex offender registration and notification laws, which are almost identical to Wisconsin's, violated the ex post facto clause of the Constitution. 538 U.S. at 106. The Court first analyzed whether the legislature "either expressly or impliedly" intended to impose punishment or instead intended to enact a regulatory scheme that was civil and non-punitive. *Id.* at 92. In deciding that question, the Court examined factors such as the intent stated in the preamble, the codification and location of various parts of the law, and the safeguards associated with the law, concluding that the intent was to create a non-punitive scheme. *Id.* at 94–96. Having reached that conclusion, the Court moved on to consider whether, despite a non-punitive legislative intent, the *effects* of the law were still punitive. The Court examined five factors to decide the "effects" question: (1) whether the sanction had historically and traditionally been regarded as punishment; (2) whether the sanction imposed an affirmative disability or restraint; (3) whether the sanction promoted the traditional aims of punishment-retribution and deterrence; (4) whether the sanction had a rational connection to a non-punitive purpose; and (5) whether the sanction appeared excessive in relation to that alternative purpose. *Id.* at 97.

Wisconsin courts have addressed the issue, as well. Wisconsin states courts have consistently held that the sex offender registry "does not evince the intent to punish sex offenders, but rather reflects the intent to protect the public and assist law enforcement." *State v. Bollig*, 2000 WI 6, ¶ 21, 232 Wis. 2d 561, 605 N.W.2d 199 (holding that the sex offender registration requirement does not constitute punishment and was therefore not a direct consequence of Bollig's no contest plea to attempted sexual assault). *See also Kaminski v. Schwarz*, 2001 WI 94, ¶ 41, 245 Wis. 2d 310, 630 N.W.2d 164 (reaffirming the law's legislative intent as being public safety and

9

"community protection"); *State v. Parmley*, 2010 WI App 79, 325 Wis.2d 769, 785 N.W.2d 655 (relying on *Bollig*'s determination of legislative intent to resolve question of statutory interpretation); *State v. Smith*, 2010 WI 16, 323 Wis.2d 377, 780 N.W.2d 90 (reiterating the legislative intent as public safety and confirming that the law serves a legitimate government interest, even when applied to persons convicted of false imprisonment absent sexual motivation). Furthermore, *Bollig* and *Kaminski* note that during the initial drafting stages of Wisconsin's sex offender registration law, the legislature relied on a report from a DOC working group entitled *Sex Offender Community Notification Proposed Components, Executive Summary and Final Report*, which emphasized community protection as the underlying motivation behind such a civil regulatory system. *Bollig*, 2000 WI 6, ¶ 22; *Kaminski*, 2001 WI 94, ¶¶ 53–54.

In other words, Wisconsin's general scheme for sex offender registration — prior to the amendments at issue here as discussed above — has been held to be constitutional by the Wisconsin Supreme Court. At issue today then is whether the amendments change the landscape so significantly so as to render the legislation unconstitutional, when it was decidedly not so in the past. With this general framework in mind, I will now turn to Plaintiffs' specific qualms. Plaintiffs' affidavits and brief describe at length the hardships they have endured to comply with these new restrictions. But the fact that the restrictions are difficult and cumbersome is not enough to make them unconstitutional. The specific constitutional arguments raised will be addressed below.

### 1. Ex Post Facto

Plaintiffs' first contention is that the amendments violate the ex post facto clause of the Constitution. As previously mentioned, relevant Wisconsin and Supreme Court precedent has repeatedly upheld sex offender registration laws, including Wisconsin's law specifically, as

10

constitutional, non-punitive, civil regulatory regimes designed to promote public safety. Plaintiffs contend, however, that Wisconsin's sex offender registration law has subsequently been amended so significantly that when the legal standards set out in those cases are applied to Wisconsin's current sex offender registration law, a different conclusion must be reached.

States are prohibited from enacting an ex post facto law. U.S. Const., Art. I, § 10, cl. 1; Wis. Const. Art. I, § 12. To determine whether a law violates the ex post facto clause, a court must determine whether the law imposes new punishment for a prior act; in other words, whether the law is primarily punitive as opposed to primarily a civil remedy or regulatory regime. "To violate the Ex Post Facto Clause, moreover, a law must be both retrospective *and* penal." *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011). The question of whether a law is sufficiently punitive so as to violate the ex post facto clause is a "matter of degree." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 509 (1995). If legislation is more remedial than punitive, even though it may contain some seemingly punitive effects, it will not violate the ex post facto clause's prohibition on retroactive application of punitive laws. *See Smith v. Doe*, 538 U.S. 84, 94 (2003).

The DOC is statutorily responsible for maintaining Wisconsin's sex offender registry. Wis. Stat. § 301.45. As stated on DOC's website, "Public safety is the primary objective of sex offender supervision." *See* Sex Offender Supervision and Rules at http://offender.doc.state.wi.us/public/proginfo/rules.jsp. Plaintiffs argue the punitive nature of the sex offender registration law is, in part, proven by the fact that DOC is the agency responsible for execution of all criminal sentences. (Doe of Connecticut Compl. ¶ 48; Doe of Florida Compl. ¶ 44.) But as noted previously, the United States Supreme Court rejected a similar argument made about Alaska's sex offender registry in *Smith v. Doe.* The Court held "even if the objective of the Act is

11

consistent with the purposes of the Alaska criminal justice system, the State's pursuit of it in a regulatory scheme does not make the objective punitive." *Smith*, 538 U.S. at 94. To that end, the DOC explicitly states:

> It is important to note that the law is not intended to impose additional "punishment" on the offender but rather increase the offender accountability through enhanced information sharing within and between the criminal justice system and the community.

http://offender.doc.state.wi.us/public/proginfo/sor.jsp. The self-professed goal, then, is clearly not punitive but rather for public safety. The second prong of the ex post facto analysis is to determine if its consequences are so extreme as to be deemed punitive. Considerations under the second phase of this analysis include whether the regulatory scheme "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith*, 538 U.S. at 97.

Here, even with the amendments, most of the elements have been addressed by relevant precedent. The *Smith* Court has already acknowledged that any stigma experienced by a person on such a sex registry was "from the dissemination of accurate information about a criminal record, most of which is already public," not the result of public display for ridicule and shaming. *Id.* Wisconsin's sex offender registration program collects the same information about sex offenders as Alaska's law (i.e., basic identifying information, including a photograph) and both states disseminate the information in a similar manner (i.e., through the internet). *Id.* at 91; Wis. Stat. § 301.45(3)(a)(1)–(4). Given that there are no distinctions that might provide a basis to hold

12

otherwise, Plaintiffs' argument that Wisconsin's sex offender registration program constitutes a "traditional" punishment in the form of shaming must be dismissed.

Plaintiffs also assert that the deterrent effect of Wisconsin's sex offender registration law constitutes a traditional form of punishment. They argue the registry is "designed to have a substantial deterrent effect, and to promote community condemnation" of registrants. (Doe of Connecticut Compl. ¶ 50; Doe of Florida Compl. ¶ 46.) But this argument has already been rejected in *Smith*: "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Smith*, 528 U.S. at 102, citing *Hudson v. United States*, 552 U.S. 93, 105 (1997). Thus, the fact that Wisconsin's sex offender registration law might deter sex offenders from violating the law does not provide a basis on which to conclude that the registration requirement itself is punitive. Plaintiffs further contend Wisconsin's sex offender registration law imposes punishment because the crimes that subject one to the registration requirements are those that include the element of "specific intent or *scienter*." (Doe of Connecticut Compl. ¶ 49; Doe of Florida Compl. ¶ 45.) The Supreme Court dismissed similar claims in *Smith*, however, finding that "whether the regulation comes into play on a finding of scienter" is of "little weight in this case." *Smith*, 538 U.S. at 105.

Plaintiffs also argue that Wisconsin's sex offender registration law constitutes an affirmative restraint and places restrictions on their liberty that are similar to probation or parole. (Doe of Connecticut Compl. ¶ 43, 47; Doe of Florida Compl. ¶ 39, 43.) For the most part, however, the requirements Plaintiffs cite are identical to those considered by the Court in *Smith*. The Alaska statute, like Wisconsin's, required sex offenders who had aggravated or multiple offenses to register for life, providing essentially the same information as Wisconsin's, and verify the information

13

quarterly.[2] *Smith*, 538 U.S. at 90. In rejecting the plaintiff's claim that the registration requirements subjected him to "affirmative disability or restraint," the Supreme Court noted these types of registrations do not place physical restraints on offenders. *Smith*, 538 U.S. at 100 ("The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint."). Unlike individuals on probation or parole, the Court noted that registered sex offenders were not subject to mandatory conditions, other than reporting, and were "free to move where they wish and to live and work as other citizens with no supervision." *Id.* at 101. While it was true that one who failed to comply with the reporting requirements would be subject to criminal prosecution, the Court noted that "any prosecution would be separate from the individual's original offense." *Id.* at 102. The Court thus concluded that "the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause." *Id.*

It is conceivable that section 301.45(2)(f), which authorizes DOC to require registrants to appear at an office or station of a law enforcement agency for the purpose of obtaining the individual's photograph, fingerprints or other information, could be implemented in such a manner that would punish or harass an offender. *See Maine v. Letalien*, 2009 ME 130, ¶ 58, 985 A.2d 4 ("[I]t belies common sense to suggest that a newly imposed lifetime obligation to report to a police station every ninety days to verify one's identification, residence, and school, and to submit to fingerprinting and provide a current photograph, is not a substantial disability or restraint on the free exercise of individual liberty."). But Plaintiffs fail to develop such a claim here. Although they state

---

[2]Unlike Wisconsin's statute, the Alaska statute at issue in Smith also required an offender to provide his driver's license number and information about vehicles to which he had access. 538 U.S. at 90. *See* Wis. Stat. § 301.45(2)(a).

14

that they have been required to travel to specified law enforcement facilities to have their photographs taken and to be fingerprinted, Plaintiffs do not indicate that this has occurred more than once. (Pl.'s PFOF ¶ 32.) Such a minimal reporting requirement is not "sufficiently severe to transform an otherwise nonpunitive measure into a punitive one." *Doe v. Pataki*, 120 F.3d 1263, 1285 (2d Cir. 1997) (rejecting ex post facto challenge to 90 day in person reporting requirement); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 378 (1995) (same).

Plaintiffs also argue that the nonpunitive protection rationale behind Wisconsin's sex offender registration law has "been exceeded" because persons subject to the lifetime registration are not reviewed on a case-by-case basis to determine the risk they pose to the community. (Doe of Connecticut Compl. ¶ 51; Doe of Florida Compl. ¶ 47.) Plaintiffs also suggest granting the general public access to information about their identity and location is excessive. (*Id.*) But as is true for most of Plaintiffs' arguments here, the Supreme Court has considered this issue and rejected the argument. The Court held that lengthier reporting requirements for those convicted of multiple or violent offenses is reasonable because the distinction is "reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." *Smith*, 538 U.S. at 102. The Court further observed the risk of recidivism posed by sex offenders is "frightening and high." *Id.* at 103. Thus, the Court concluded, "The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determinations of their dangerousness, does not make this statute a punishment under the *Ex Post Facto* clause." *Id.* at 104. In sum, Plaintiffs' argument has been considered by the Supreme Court and rejected. Wisconsin's sex offender registry program is reasonable in light of its nonpunitive objective and therefore does not violate the ex post facto clause.

15

Many of the restrictions of which Plaintiffs complain are separate and distinct from the registration and notifications statutes they have challenged. For example, Plaintiffs are banned from using Facebook and MySpace because of the rules governing those forms of social media, not by Wisconsin's registration requirements. The response of others to the fact of Plaintiffs' prior convictions cannot reasonably be viewed as punishment inflicted by the State. Likewise, the fact neighbors or prospective customers may shun or refuse to do business with them is not punishment imposed by the State.

Plaintiffs contend that the Wisconsin legislature added to the punishment for their prior offenses by prohibiting individuals previously convicted of sex offenses from changing their name, working around children or taking pictures of children without their parents' written consent are separate and distinct from the registration requirements the law creates. Wis. Stat. §§ 301.47, 948.13, 948.14. But prohibiting future conduct based on one's status as a sex offender is not the same as increasing the punishment for the initial crime. Just as conviction of a felony results in a loss of the right to possess a firearm, Wisconsin has decided that a prior conviction for a sex offense results in the loss of the right to work directly with children or take pictures of children without their parents' consent. One can argue that such laws are too extreme or represent an over-reaction to the fear of sexual abuse of children, but they do not violate the ex post facto clause of either the United States or Wisconsin constitutions. These provisions created new crimes; they did not increase the punishment for Plaintiffs' previous offenses. *See, e.g., United States v. Sutton*, 521 F.2d 1385, 1390-91 (7th Cir.1975) (holding that Congress constitutionally allowed to restrict criminals whose felonies occurred in the past from receiving firearms).

16

Only the $100 annual fee would seem to fall into a different category. As noted above, after Plaintiffs' convictions, Wisconsin amended its sex offender registration statute to authorize the DOC to require sex offenders to pay a $100 annual fee to help offset the costs of monitoring sex offenders' activities. Wis. Stat. § 301.45(10). Defendants cite no case upholding the imposition of such a charge on individuals based solely on a prior conviction, and the Court has been unable to find any authority on its own. Though denominated a fee and intended to offset the costs of monitoring sex offenders, the annual assessment bears a striking resemblance to a fine. A fine, of course, is a traditional form of punishment for criminal conduct. *United States v. Devenport*, 131 F.3d 604, 610 (7th Cir. 1997). Though $100 is not as great an amount as most fines today, the statute authorizes an annual assessment of $100. Given Plaintiffs' life expectancies, the cumulative amount assessed is likely to well exceed $2000. Moreover, as small an amount as $50 has been found sufficient to trigger the ex post facto prohibition. *See United State v. Jones*, 489 F.3d 243, 255 (6th Cir. 2007) (holding that application of increase in special assessment from $50 to $100 to criminal offense that preceded increase violated ex post facto clause).

Several courts have upheld the assessment of fees for services provided defendants while on probation or parole for crimes committed before the effective date of the statute authorizing the assessment. *See, e.g., Taylor v. State of Rhode Island*, 101 F.3d 780, 783-84 (1st Cir. 1996) (holding that $15 monthly fee upon prisoners to defray the costs of their imprisonment was not punitive and thus not ex post facto). But it is one thing to impose a fee on a defendant for services provided to him or on his behalf while he is on supervision or in custody. It is altogether a different matter to impose an annual fee on offenders who have been discharged from their sentences so as to offset the cost of providing a service that is intended solely for the benefit of the general public. The fact that

17

the assessments are used to offset the costs of monitoring the offenders does not eliminate the penal aspect of the assessment. All funds taken in by the Government in the form of fines are used to pay for or off-set something. To be sure, the State has a non-punitive purpose for wanting to collect money for such a purpose, but to single out only individuals who have prior convictions for sexual assaults as the sole source of such funds can only be seen as punitive. Since no such fee was authorized at the time of Plaintiffs' convictions, imposing it on them at this point would appear to violate the ex post facto clause. *Dobbert v. Florida*, 432 U.S. 282, 292 (1977) (noting that a "statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.") (internal quotations omitted). Absent any argument from Defendants to the contrary, I conclude that the fee element of the Wisconsin law, as applied to Plaintiffs whose convictions preceded the enactment of the statute authorizing the fee, is unconstitutional. But this does not bar enforcement of the entire statute; enjoining the Defendants from assessing any fees against Plaintiffs is sufficient to cure any violation.

### 2. Equal Protection/Substantive Due Process

Plaintiffs also contend that Wisconsin's sex offender registration and notification statutes cannot withstand an equal protection analysis[3] and that the provisions are unconstitutional under the standards of substantive due process. They argue that they were placed in an irrational and

---

[3] Plaintiffs rely on the federal equal protection standard described in *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (2006) and the Wisconsin standard applied in *Nankin v. Shorewood*, 2001 WI 92, 245 Wis.3d 86, 630 N.W.2d 141, 2001 Wis. LEXIS 426 (2001). (*See* Pl. Br. In Supp., ECF No. 27 at 29.)

18

disfavored "classification" of offenders who were still serving their sentences as of December 25, 1993, and therefore subjected to lifetime registration, whereas other offenders who had completed their sentences by that date were not subjected to lifetime registration and were therefore more favored. Plaintiffs also assert an equal protection violation[4] because they did not receive the benefit of an "individualized, risk-determination-based judicial system," which is used in some instances to impose registration on offenders whose crimes do not otherwise qualify them as sex offenders. They argue Wisconsin cannot maintain two systems that can lead to sex offender registration, one which is based on an individualized risk and one which is automatic based on certain convictions.

But Plaintiffs' argument suffers from several flaws. First, Plaintiffs fail to establish they were treated less favorably than other similarly situated persons or groups — an essential element of the equal protection analysis. *See, e.g.*, *Moore v. State of Missouri*, 159 U.S. 673 (1895); *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *see also Marin-Garcia v. Holder*, 647 F.3d 666, 673 (7th Cir. 2011) (explaining that "although equal protection requires that all persons similarly circumstanced shall be treated alike, the constitution does not require things which are different in fact to be treated in law as though they were the same.")(citations omitted). Plaintiffs here have failed to even allege, let alone establish, that they were similarly situated to the class of people whom they assert were treated more favorably. In any event, the distinction between offenders who were still serving their sentences as of December 25, 1993, as compared to offenders who had already completed their sentences, is that the former were more recent offenders and/or had received longer sentences,

---

[4] Technically Plaintiffs raise the issue under both equal protection and due process grounds. However, the Supreme Court has noted that "an argument based on equal protection essentially duplicates an argument based on due process." *Chapman v. United States*, 500 U.S. 453, 465 (1991). Therefore, Plaintiff's equal protection and substantive due process claims will be analyzed together.

19

presumably due to more egregious offenses. In any event, it is rational to find that those offenders who were still serving their sentences as of the date of implementation, on the whole, posed a greater danger to society than those offenders who had already completed their sentences and had not reoffended. Therefore, the two "classes" of offenders the Plaintiffs identify were not similarly situated for purposes of equal protection analysis.

As to Plaintiffs' second equal protection challenge — that they did not receive the benefit of an "individualized, risk-determination-based judicial system" before being subjected to sex offender requirements whereas some offenders did — they have likewise failed to demonstrate that the two "classes" of offenders were similarly situated. Wis. Stat. § 973.048(1m)(a) establishes a judge's authority to order that an offender be subjected to sex offender registration even when the offender did not commit any of the sex offenses that the legislature enumerated as requiring sex offender registration. In essence, § 973.048(1m)(a) permits a judge to find that an offense was sexually motivated and require registration, even when it is not one of the enumerated sex offenses. By contrast, Plaintiffs committed offenses that were sex crimes on their face — second degree sexual assault of a child, second degree sexual contact, and third degree unlawful sexual intercourse — and therefore were automatically determined to be sex offenders. Accordingly, Plaintiffs were not similarly situated to the offenders who received the "individualized, risk-determination-based judicial system" because such offenders did not commit offenses that, on their face, were serious sex offenses as Plaintiffs did. These two "classes" of offenders are not similarly situated for equal protection purposes and Plaintiffs' argument on this ground is thus a non-starter.

Even assuming, *arguendo*, Plaintiffs were similarly situated to the classes of offenders they contend were more favorably treated, their equal protection arguments would still fail because the

20

evidence is clear that the state has a rational basis in making the classifications. "[W]hether reviewing substantive due process or equal protection, the threshold question is whether a fundamental right is implicated or whether a suspect class is disadvantaged by the challenged legislation." *State v. Smith*, 2010 WI 16, ¶ 12, 323 Wis. 2d 377, 780 N.W.2d 90. If not, as is the case here, the Court applies "more deferential, rational basis review." *Id.* Rational basis analysis requires the court to "search for any facts upon which the legislation reasonably could be applied" to Plaintiffs. *Id.* To succeed on a substantive due process or equal protection challenge to a statute, Plaintiffs must prove, beyond a reasonable doubt, that the statute is not rationally related to a legitimate government interest. *Id.* ¶¶ 8, 38.

Additionally, a rational basis exists for granting some offenders an "individualized, risk-determination-based judicial system" whereas Plaintiffs were subjected to sex offender registration merely by virtue of their convictions. The legislature enumerated certain, specific sex offenses that automatically result in registration. *See* Wis. Stat. § 301.45(1d)(b). Those enumerated offenses clearly contain a sexual component and therefore demand registration. By contrast, Wis. Stat. § 973.048(1m)(a) permits a judge to evaluate offenders who commit certain other offenses to determine whether the offenses were actually sexually motivated and whether it would be in the interest of public protection to have the person register. There is no need for an individualized assessment to determine whether Plaintiffs' offenses — second degree sexual assault of a child, second degree sexual contact, and third degree unlawful intercourse — were sexually motivated or appropriate for registration as sex offenders. As is consistent with common sense, the legislature has already determined such crimes are sex offenses and that it is in the interest of public protection to require registration. Therefore, a rational basis exists for allowing a judge discretion in ordering

some offenders to register as sex offenders (when it may not be facially obvious that their crimes were sexually motivated), while making registration automatic for offenders such as Plaintiffs whose crimes were unquestionably of a sexual nature.

Finally, Plaintiffs vaguely argue that there should be "equal application of the effective date process in Wisconsin legislation." (Pl. Br. In Supp., ECF No. 27 at 35.) But Plaintiffs cite no legal authority and there is none to be found. There is no requirement under Wisconsin law that like acts of legislation utilize their effective dates in the same way. If anything, Plaintiffs' arguments merely rehash an issue fully discussed above: a challenge to the legislation's retroactive applicability. For the reasons detailed previously, that argument is rejected.

### 3. Other Claims

Plaintiffs also have a variety of other issues they list with the amendments. In one paragraph of their complaints, Plaintiffs assert a cause of action for "unconstitutional legislative impairment of plaintiff's plea agreement contract" in violation of Article I, Section 10 of the Constitution. Plaintiffs appear to be arguing that Wisconsin's sex offender registry law added sanctions that were not contemplated when they entered into their plea agreements. This argument is flawed for two reasons.

First Plaintiffs' argument with regard to this claim is premised on the faulty assumption that their sex offender registration constitutes a "sanction." But as discussed above, the sex offender registration is a civil regime designed to protect the public, not a punitive sanction. No additional "sanction" has been imposed on Plaintiffs by virtue of their registration as sex offenders. Furthermore, there is no allegation that any agreement as to the prosecution's sentencing recommendation was not upheld or that the specific crimes to which Plaintiffs pled guilty were

22

changed. Registration as a sex offender pursuant to Wis. Stat. § 301.45 does not interfere with Plaintiffs' plea agreements and their claim in this regard is dismissed.

Next, Plaintiffs have asserted a statutory invasion of privacy claim pursuant to Wis. Stat. § 995.50. (Doe of Connecticut Compl. ¶ 60; Doe of Florida Compl. ¶ 55.) Wis. Stat. § 995.50(2)(b) provides that an invasion of privacy includes "the use, for advertising purposes or for purposes of trade, of the name, portrait, or picture of any living person, without having first obtained the written consent of the person . . ." Plaintiffs' claim is based on their contention that the publication of sex offender information on the Family Watchdog website constitutes Defendants' use of their name and picture for advertising purposes or purposes of trade. But there is no evidence whatsoever that Defendants have any responsibility for operating or maintaining the website or that Defendants have ever used sex offenders' names, pictures, or information for advertising or trade purposes. Furthermore, Wisconsin is required to provide public access to information about sex offenders. *See* 42 U.S. § 14071. Given that the State of Wisconsin is required to disclose information about registered sex offenders, there is no legal basis for finding Defendants were not entitled to share sex offender registry information with Family Watchdog.

Plaintiffs also argue Wisconsin's sex offender registry law violates the First Amendment right to free speech and expression because the law requires registrants to provide their email and internet account and password information. (Doe of Connecticut Compl. ¶ 61; Doe of Florida Compl. ¶ 56.) But Wisconsin's sex offender registration law does not require registrants to provide any password information. Wis. Stat. § 301.45(2)(a)(6m) requires only that a registrant provide his email address, internet usernames, and websites he maintains; no password information is collected. There is no recognized First Amendment cause of action for a sex offender who is required to

23

provide his email address and websites he maintains where he is not required to provide password information and where there is no allegation that his internet activity has ever been restricted. Plaintiffs' First Amendment challenges on this ground are accordingly dismissed.

### 4. Qualified Immunity

Finally, regardless of the success of Plaintiffs' arguments on the constitutionality of the amendments, Defendants contend they are immune from the payment of money damages under the doctrine of qualified immunity. "Government officials performing discretionary functions are shielded from damage liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The "plaintiff bears the burden of establishing the existence of the 'clearly established' right by citing cases that are 'closely analogous' or 'would give a reasonable public official . . . notice that [his] actions violated a constitutional right." *Burkes v. Klauser*, 185 Wis. 2d 308, 338, 517 N.W.2d 503 (1994), cert. denied, 513 U.S. 1151 (1995) (quoting *Barnhill v. Board of Regents*, 166 Wis. 2d 395, 409, 479 N.W.2d 917 (1992)).

Plaintiffs have failed to meet this burden. As set forth above, the amendments themselves do not, for the most part, violate Plaintiffs' constitutional rights. The one exception to this, as discussed above, is the fine provision. However, Defendants are nonetheless entitled to qualified immunity on the fine provision as *Smith* did not specifically address fines and the law in that area was therefore not clearly established.


## IV. Conclusion

Plaintiffs' affidavits explain in detail the difficulties and embarrassment they and their families have endured as a consequence of complying with these new restrictions, even though their

24

convictions are now almost twenty years in the past and they have led completely law-abiding, if not exemplary, lives in the interim. Their stories raise substantial questions as to the wisdom and fairness of subjecting them and similarly situated individuals to lifetime registration and notification requirements with their attendant obligations and restrictions. But given the previous decisions addressing the issues Plaintiffs raise, I conclude that the relief, if any, must come from the legislative branch. With one limited exception, the fact that the restrictions are difficult and cumbersome is not enough to make them unconstitutional. For the most part, the amendments to the Wisconsin sex offender registry system do not depart in any meaningful way from the systems already found to be constitutional by the *Bollig* and *Smith* Courts. The lone exception I find to this is the $100 fine provision, which I have concluded cannot be constitutionally imposed on them. With this exception, Defendants' motion for summary judgment is **GRANTED** and Plaintiffs' motion for summary judgment is **DENIED**. The Clerk is directed to enter judgment declaring that imposition of the $100 annual fee on Plaintiffs pursuant to Wis. Stat. § 301.45(10) constitutes punishment in violation of their rights under the ex post facto clauses of the United States and Wisconsin constitutions and enjoining Defendants from assessing or collecting such amount from Plaintiffs. All other claims against Defendants are dismissed with prejudice.

      **SO ORDERED** this   28th   day of August, 2012.


                                   s/ William C. Griesbach
                                   William C. Griesbach
                                   United States District Judge