UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN DOE OF CONNECTICUT and
JOHN DOE OF FLORIDA,

        Plaintiffs,

v.                                                Case No. 10-C-0911

RICK RAEMISCH et al.,

        Defendants.

**DECISION AND ORDER DENYING RULE 59
MOTIONS FOR RECONSIDERATION**

Plaintiffs, both individuals who had previously been convicted of sexual assault in Wisconsin, brought this action challenging the constitutionality of Wisconsin's sex offender registration and notification statute, Wis. Stat. §§ 301.45, 301.46 (2009-10), as applied to individuals whose convictions preceded the statute's effective date. Although constitutional challenges to the retroactivity of similar statutes had been previously been rejected by other courts, including the United States Supreme Court, plaintiffs brought a broad-based challenge against the entire statutory framework. Plaintiffs claimed that the statutes impose punishment in violation of the *ex post facto* clauses of the United States and Wisconsin constitutions, and that the laws violate plaintiffs' constitutional rights to equal protection and substantive due process. On August 28, 2012, the Court issued an order rejecting in full all but one of plaintiffs' claims. On the parties' cross motions for summary judgment, the Court granted the plaintiffs' motion in part, finding the § 301.45(10) requirement that plaintiffs pay a $100 annual assessment constituted an

unconstitutional *ex post facto* fine. In all other respects, the Court denied plaintiffs' motion and granted defendants' motion. Pursuant to Federal Rule of Civil Procedure 59(e), both parties have now filed motions for reconsideration of the Court's decision as to the *ex post facto* and equal protection issues. For the reasons that follow, both motions will be denied.

Plaintiffs move the Court for reconsideration on several grounds, contending first that the Court erred in failing to find that Wisconsin imposes in-person reporting requirements that make Wisconsin's sex offender registration law materially different than the Alaska law considered in *Smith v. Doe*, 538 U.S. 84 (2003), and as a result *Smith* is not controlling. Rather, plaintiffs argue the in-person reporting requirements amount to physical restraints similar to criminal sanctions. Plaintiffs contend that the Court relied on an erroneous characterization of plaintiffs' Statement of Proposed Findings of Fact in concluding that plaintiffs failed to put forth proof of physical restraints on their liberty such that the law's execution is punitive. Second, plaintiffs argue the Court "misapprehended the arbitrariness" of Wisconsin's sex offender registration law with regard to its application to offenders based on the statute's effective date. (Pls.' Recons. Br. 7, ECF No. 61.) As such, plaintiffs contend the Court's conclusion that plaintiffs failed to demonstrate that they were similarly situated to the favored class and that plaintiffs failed to establish there was no rational basis for disparate treatment under the law was erroneous.

In addition, defendants seek reconsideration of the Court's decision granting summary judgment in favor of plaintiffs as to the unconstitutionality of the $100 annual assessment. Defendants contend that the "specific fee issue addressed by the court was not squarely raised prior to the summary judgment decision" and is therefore appropriate for reconsideration. (Defs.' Recons. Br. 2, ECF No. 59.) Defendants assert that the Court incorrectly applied the law in

2

concluding the $100 annual assessment imposed under § 301.45(10) constitutes an unconstitutional *ex post facto* fine.

**LEGAL STANDARD**

A Rule 59(e) motion may be granted where a party demonstrates the discovery of newly discovered evidence, an intervening change in the controlling law, or a "manifest error of law" by the court. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). The purpose of a Rule 59(e) motion is to enable a district court to correct its own errors and thus avoid unnecessary appellate procedures. *Divane v. Krull Elec.Co.*, 194 F.3d 845, 848 (7th Cir. 1999). But the motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263 (7th Cir. 1995). Nor should such a motion be used to present evidence that was available earlier or attempt to correct a party's own procedural errors. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 730 (7th Cir. 1999); *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him."). As a result, Rule 59(e) motions should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

3

## ANALYSIS

**I.     Plaintiffs' *Ex Post Facto* Claims**

Plaintiffs first argue that the Court erroneously characterized the record of undisputed facts related to the obligation imposed on them under Wisconsin's current sex offender registration law to periodically report in person to local law enforcement offices for the purpose of having their photographs and fingerprints taken. In its original decision, the Court acknowledged that subjecting offenders convicted under earlier versions of the law to the authority granted the Wisconsin Department of Corrections under the current version to require a person covered by the law "to report to a place designated by the department, including an office or station of a law enforcement agency, for the purpose of obtaining the person's fingerprints, the photograph or other information," Wis. Stat. § 301.45(2)(f), could be implemented in such a way as to punish an offender. (Aug. 28, 2012 Decision 14, ECF No. 55.)  The Court concluded, however, that plaintiffs had failed to develop such a claim in this case because "[a]lthough they state that they have been required to travel to specified law enforcement facilities to have their photographs taken and to be fingerprinted, Plaintiffs do not indicate that this has occurred more than once." (*Id.* at 14-15 (citing Pl.'s PFOF ¶ 32, ECF No. 45-1).)  The Court concluded that "[s]uch a minimal reporting requirement is not 'sufficiently severe to transform an otherwise nonpunitive measure into a punitive one.'" (*Id.* at 15 (citing *Doe v. Patacki*, 120 F.3d 1263, 1285 (2d Cir. 1997) (rejecting ex post facto challenge to 90 day in person reporting requirement); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 378 (1995) (same)).) Plaintiffs contend that the Court essentially misread the record and that they in fact had explained in their respective affidavits that they were required to make such "in person" reports "periodically." (Pls.' Mem. In Support 4-5, ECF No. 61.)  As a result, plaintiffs contend that the Court erred in

4

finding no material difference between the sex offender registration and reporting law at issue here and Alaska's analogous law considered in *Smith*. 538 U.S. 84 (2003). They assert that because the laws are, in fact, materially different–namely, that the Wisconsin law requires offenders to report to law enforcement agencies in person to be photographed and fingerprinted–the holding in *Smith* is not controlling in this case.

Plaintiffs also cite the Seventh Circuit's decision in *Schepers v. Comm'r*, 691 F.3d 909 (7th Cir. 2012), in support of their contention that such an "in person" reporting requirement constitutes punishment. In *Schepers*, decided the same day as this Court's decision, the Seventh Circuit held that the failure of the Indiana Department of Corrections to provide a procedure by which individuals subject to that state's sex offender reporting and notification statute could correct errors in the registry maintained by the Department violated the Due Process Clause of the Fourteenth Amendment. The plaintiffs alleged that the Indiana Department of Corrections' failure to provide any procedure to correct errors in the registry infringed on a liberty interest protected by the Due Process Clause. *Id*. The Court commented that the interest was "much more than [a] simple reputational interest" and explained that the Indiana statute deprived registrants

> a variety of rights and privileges held by ordinary Indiana citizens, *in a manner closely analogous to the deprivations imposed on parolees or persons on supervised release*. Citizens do not need to report to the police periodically, nor is their right to travel conditioned on notifications to the police in both the home and the destination jurisdiction. Unlike Schepers, who was forbidden from living within 1,000 feet of a school or park while he was categorized as a sexually violent predator, members of the public are free to decide where they wish to live.

*Schepers*, 691 F.3d at 914 (emphasis added) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). The Court concluded that mistakenly labeling a sex offender as a sexually violent predator implicated a liberty

5

interest protected by the Due Process Clause. *Id.* at 915. Plaintiffs argue that *Schepers* supports their claim that the requirements of Wisconsin's law are punitive.

Turning first to the contention that the Court misconstrued the facts, it should be noted that the factual finding proposed by plaintiffs and referenced by the Court in its original decision made no mention of periodic "in person" visits to law enforcement agencies. It simply stated that "as part of their registration requirements, plaintiffs have been required to travel to specified law enforcement facilities to have their photographs taken and to be fingerprinted which is authorized by § 301.45(2)(f), Wis. Stats." (Pl.'s PFOF ¶ 32. ECF No. 45-1.) Even their underlying affidavits which are cited as support for the proposed finding do not indicate that they made such visits more than once. Their affidavits state merely that "[i]n DOC's discretion and subject to its demand," plaintiffs were "subject to providing periodic photographs and fingerprints." (Aff. of John Doe of Connecticut ¶ 30, ECF No. 34; Aff. of John Doe of Florida ¶ 21, ECF No. 39.) The fact that DOC is given authority under the statute to require sex offenders subject to the law to personally appear at a law enforcement agency does not mean that the DOC ever exercised that authority over plaintiffs. Plaintiffs failed to state either in their proposed findings or their original affidavits that they were ever directed to report by the Wisconsin DOC. Plaintiffs have now submitted new affidavits, however, explaining in greater detail what they stated generally in their original affidavits. (Aff. of Doe I ¶ 2, ECF No. 61-1; Aff. of Doe II ¶ 2, ECF No. 61-2.)

It is well established that "[a] party may not introduce evidence or make arguments in a Rule 59 motion that could or should have been presented to the court prior to judgment." *United States v. 47 W. 644 Rt. 38, Maple Park, Ill.*, 190 F.3d 781, 783 (7th Cir. 1999); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) ("The rule . . . certainly does not allow a party to introduce new

6

evidence or advance arguments that could and should have been presented to the district court prior to the judgment."); *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 202, n.5 (7th Cir. 1994) (finding that new affidavits submitted with a motion to reconsider did not present evidence that was previously unavailable); *F/H Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 116 F.R.D. 224, 227 (N.D. Ill. 1987) ("Newly filed affidavits may be the basis of an order vacating a judgment under Rule 59(e) where the aggrieved party was not properly allowed an opportunity to present its side."). Plaintiffs appear to have presented little justification for why their new affidavits should receive any mention, and defendants insist the Court must disregard them. Nevertheless, the affidavits do not change the result here.

The new affidavits explain that plaintiffs must travel to specific law enforcement agency locations to provide current photographs and fingerprints. (Aff. of Doe I ¶ 2, ECF No. 61-1; Aff. of Doe II ¶ 2, ECF No. 61-2.) Plaintiffs state they are not allowed to do so via mail as is the case with other information provided pursuant to Wisconsin's sex offender registration law. In the case of Doe I, he states he must report to a station 60 miles from his Connecticut home once every three years to be photographed and fingerprinted in both Connecticut and New York. (Aff. of Doe I ¶ 2, ECF No. 61-1.) Likewise, Doe II must appear at the county Sheriff's department where he lives in Florida twice per year, requiring travel more than 30 miles each way. (Aff. of Doe II ¶ 2, ECF No. 61-2.) In addition, Doe II asserts that since 2011, an armed and uniformed Florida police officer has come to his home once per month to question him and obtain proof of a current driver's license with unaltered sex offender status on it. (*Id.*)

This is not new evidence and it could have been previously raised, as plaintiffs knew about it at the time they submitted summary judgment briefs. Nevertheless, plaintiffs have still not made

7

clear that any of these requirements are imposed by the law at issue–Wisconsin's sex offender registration law. It is plaintiffs' convictions for sex offenses in Wisconsin that subject them to the sex offender registration laws of the states where they currently reside. *See* Wis. Stat. § 301.45(4m)(a), (b). But the specific reporting requirements imposed by Connecticut and Florida are not mandated by Wisconsin law, and are not under consideration here.[1] Plaintiffs offer no evidence or even assertion that they have ever been ordered by the Wisconsin DOC to report in person to a place, such as a law enforcement station or department, to be fingerprinted or photographed. They have no standing to challenge provisions of a law to which they have not been made subject. *Harp Adver. Ill., Inc., v. Village of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir.1993). Plaintiffs were at liberty to move to Connecticut and Florida, and in so doing, chose to be subject to the laws–including the sex offender registration and notification laws–of those states. In sum, there is nothing in plaintiffs newly-submitted affidavits or in their previous filings to alter the Court's earlier conclusion that plaintiffs have failed to develop a claim that Wisconsin's sex offender registration law has been implemented in a manner that constitutes punishment for their previous convictions.

*Shepers* does not change the result either. *Shepers* held that the restrictions placed on sex offenders by Indiana's registration and notification statute, many of which have been found non-punitive by the Supreme Court, implicated the liberty interests of individuals who claimed they were

---

[1] *See* Fla. Stat. § 943.0435(2-3), (6) ("[L]aw enforcement agencies . . . shall verify the addresses of sexual offenders who are not under the care, custody, control, or supervision of the Department of Corrections"); Fla. Stat. § 943.0435(14)(a) ("A sexual offender must report in person . . . to the sheriff's office in the county in which he or she resides or is otherwise located to reregister."); Fla. Stat. § 775.21(6-8) (same as applied to "sexual predators"); Conn. Gen. Stat. § 54-251(b), (c) (requiring registrants to verify information such as current address via mail, and requiring registrants to report to a law enforcement agency to retake a photograph at least once every five years).

erroneously placed on the list. *Shepers* did not address the question of whether the retroactive application of the restrictions to individuals whose convictions predate the effective date of the statute violates the Ex Post Facto Clause of the United States Constitution. For the reasons set forth in its original decision, the Court concludes they do not.

**II.     Plaintiffs' Renewed Equal Protection Argument**

Plaintiffs also argue that the Court erred in dismissing their equal protection claim. Plaintiffs contend the Court overlooked material evidence in concluding that plaintiffs "failed to allege, much less establish, that they were similarly situated" to sex offenders that completed their sentences prior to the December 25, 1993 effective date. Plaintiffs point to allegations in their complaint and summary judgment brief that they claim indicate that they were similarly situated to the "disfavored class." (Pls.' Recons. Br. 8-9, ECF No. 61.) Plaintiffs also contend that the Court erred in concluding that there was a rational basis for distinguishing between the sex offenders who were still serving their sentences as of December 25, 1993 and other sex offenders who had completed their sentences by the effective date. Much of plaintiffs' argument to this end simply rehashes issues raised at summary judgment and offers nothing new. To a large extent, plaintiffs simply ignore the deference to which legislative judgments of the kind at issue here are to be accorded by courts.

Plaintiffs have pointed to no evidence sufficient to overturn the conclusion that their claim cannot be sustained because there is a rational basis for making the distinction between offenders still serving their sentences as of the effective date, compared to offenders who had already completed their sentences. Under a rational basis analysis, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide

9

a rational basis for the classification." *See Turner v. Glickman*, 207 F.3d 419, 425 (7th Cir. 2000). Empirical proof is not required and generally not available for legislative determinations of this kind. Plaintiffs must prove, beyond a reasonable doubt, that the statute is not rationally related to a legitimate government interest. *State v. Smith*, 2010 WI 16, ¶ 8, 323 Wis. 2d 377, 780 N.W.2d 90. Here, the Court has already explained why in its judgment the legislature had a rational basis for finding that offenders who were still serving their sentence as of the effective date included sex offenders who were either more recent offenders or those who had committed more serious offenses and were thus serving longer sentences. At the same time, offenders who completed their sentences by the effective date likely committed their offenses more remotely in time, or committed less serious crimes. As in most statutes, the line drawn is not perfect. There will be some offenders that fall within who are less dangerous than some who are excluded. Perfection is neither required nor possible; reasonableness is. Here, the legislature drew a line based on its assessment of the danger offenders posed to society. As such, it is reasonable to distinguish between these more recent or serious offenders and those who had completed their sentences by the effective date, and plaintiff has failed to prove otherwise.

**III.    Defendants' Motion for Reconsideration**

Finally, defendants argue that the Court relied on an incorrect application of the law in deciding that the $100 fee assessment imposed under Wis. Stat. § 310.45(10) was an unconstitutional fine. Defendants argue that under *Smith*, the Court must assess the statute as a whole, and because the fee assessment is a part of a comprehensive statutory scheme, the Court improperly considered its constitutionality separately. Defendants assert this particular issue was

10

not "squarely raised" before summary judgment; as such, defendants claim the issue is appropriately raised under Rule 59(e) and was not waived.

It is true that plaintiffs sought a determination that Wisconsin's entire sex offender registration and notification act was unconstitutional as applied to them. But implicit in their argument was the claim that certain provisions violated their constitutional rights, and plaintiffs expressly mentioned the annual fee assessment as one of those provisions. (Pls.' Br. in Opp. 6, ECF No. 47.) If, as the Court has found, one provision of the challenged statutes can not be constitutionally applied retroactively to individuals whose convictions precede the effective date of the statute, then surely it makes more sense to hold that provision invalid as to such offenders, to in a sense sever the provision, than to declare application of the entire statute unconstitutional. *See United States v. Booker*, 543 U.S. 220, 258 (2005) (noting that court must "refrain from invalidating more of the statute than is necessary") (internal quote omitted). Still, because neither party addressed the issue in detail, it merits further consideration.

Defendants argue that *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007) is instructive. There, the Court analyzed the constitutionality of Tennessee's sex offender registration and monitoring statutes and found that they did not violate the *ex post facto* clause. 507 F.3d at 1000. The Tennessee statute implemented continuous satellite-based monitoring of violent sexual offenders and authorized the board of probation and parole to charge offenders a fee to recoup costs of the monitoring program. The Sixth Circuit upheld the law in its entirety, but did not discuss the constitutionality of the fee provision. Indeed, it is not clear from the Court's opinion that the plaintiff was even assessed a fee. Under these circumstances, *Bredesen* is hardly persuasive

11

authority that fees of this nature can be constitutionally applied retroactively without violating the Ex Post Facto Clause of the United States Constitution.

Defendants also argue that, even considering the fee separately, the Court erred in finding the annual assessment an unconstitutional part of the statute. Defendants urge that, under *Smith*, the Court must point to the "clearest proof" that the fee is punitive in order to override otherwise clear legislative intent to the contrary. Rather, here, defendants contend that there is a rational non-punitive purpose behind the annual assessment and the fee amount is not in excess of what is necessary for that purpose. To this end, defendants raise no evidence or arguments that contradict the Court's decision and reasoning fully explained in its summary judgment order. As explained therein, the fact that the legislature helps to offset the costs of monitoring sex offenders does not mean the assessment does not constitute a fine. The annual assessment is not different than other fines paid as a punishment where the funds are applied to offset costs, and plaintiffs receive no benefits from the annual assessment.

Defendants also contend that the Court misapplied the law in analyzing *Taylor v. State of Rhode Island*, 101 F.3d 780 (1st Cir. 1996). Defendants suggest that *Taylor* counsels in their favor, arguing that the Court should follow *Taylor* in holding that retroactively imposing a "modest" fee in order to recoup the costs of a supervisory program is reasonable and nonpunitive. However, as already discussed, *Taylor* assessed a fee imposed to offset costs of services provided to offenders serving parole and probation sentences. 101 F.3d at 783-84. Defendants insist that the principles applied in *Taylor* are relevant here. However, here, the fee applies even after registrants have completed their sentences, and the registrants receive no benefits from their payment. Rather, the payment of the annual assessment is intended solely to benefit the public by funding a public safety

regulatory regime. As such, I remain convinced that the $100 annual fee can only be seen as punitive.

## CONCLUSION

In sum, I remain convinced that the $100 annual assessment imposed by Wis. Stat. § 301.45(10) constitutes an unconstitutional *ex post facto* fine, but that the other constitutional defects plaintiffs allege are without merit. The parties' motions for reconsideration fail to show a need to correct manifest errors of law or fact. While the parties generally re-argue their original positions on the constitutional issues and raise several points of disagreement with the Court's analysis, they have not established errors requiring reconsideration. Accordingly, both plaintiffs' motion for reconsideration (ECF No. 60) and defendants' motion for reconsideration (ECF No. 58) are **DENIED.**

Dated this   3rd   day of January, 2013.

                                                            s/ William C. Griesbach
                                                            William C. Griesbach, Chief Judge
                                                            United States District Court